## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARIM ROSARIO RIVERA , | : | **CIVIL NO.: 1:19-CV-01787** |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| ANDREW M. SAUL, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

The plaintiff, Karim Rosario Rivera ("Rivera"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Because the decision of the Commissioner is supported by substantial evidence, we will affirm his decision denying Rivera's claim.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 5-1* to *5-17*.[1]  On July 27, 2016, Rivera applied for supplemental security income ("SSI"), alleging that she had been disabled since July 14, 2016. *See Admin. Tr.* at 11. After the Commissioner denied Rivera's claim at the initial level of administrative review, Rivera requested an administrative hearing. *Id.*  On April 26, 2018, Rivera, with the assistance of counsel, testified at a hearing before Administrative Law Judge Susan Torres ("the ALJ"). *Id.* at 179–210.

The ALJ determined that Rivera was not disabled since July 27, 2016, the date she filed her application for SSI. *Id.* at 12.  And so, she denied Rivera benefits. *Id.* at 11–24.  Rivera appealed the ALJ's decision to the Appeals Council. *Id.* at 285.  Although Rivera submitted evidence to the Appeals Council that was not before the ALJ, the Appeals Council rejected that evidence, some of it on the basis that the evidence does not show a reasonable probability that it would change the outcome of the decision and some of it on the basis that the evidence does not relate to the period at issue. *Id.* at 2.  The Appeals Council denied Rivera's request for review on August 15, 2019. *Id.* at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

---

[1]  The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Rivera's claim.

Rivera then filed a complaint with this court on October 15, 2019, seeking judicial review of the Commissioner's final decision to deny her benefits. *Doc. 1*. After the Commissioner filed an answer and a certified transcript of the administrative proceedings, *docs. 4, 5*, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned, *doc. 12*. The parties filed briefs, and this matter is ripe for decision. *Docs. 11, 15*.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Rivera is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C.

§ 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).[2]   To satisfy this requirement, a claimant

must have a severe physical or mental impairment that makes it impossible to do

his or her previous work or any other substantial gainful work that exists in the

national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine

whether a claimant is disabled. 20 C.F.R. § 416.920(a).  Under this process, the

ALJ must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and RFC. 20 C.F.R. § 416.920(a)(4)(i)-(v).

The ALJ must assess a claimant's RFC at step four. *Hess v. Comm'r of Soc.*

*Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is '"that which an individual

is still able to do despite the limitations caused by his or her impairment(s).'"

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting

---

[2]  Here and elsewhere, "we cite to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 n.1 (3d Cir. 2019).

*Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  In making this RFC assessment, the ALJ considers all relevant evidence in the record and all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 416.945 (a)(1), (a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Rivera's Claim.

On October 3, 2018, the ALJ issued a decision denying Rivera benefits. *Admin. Tr.* at 8.  Before applying the sequential-evaluation process, the ALJ addressed Rivera's submission of exhibits after the hearing.  At the hearing, in response to a request by Rivera's counsel that the record remain open for the admission of additional exhibits, the ALJ stated the she would keep the record open until May 18, 2018. *Id*. at 183–84, 210.  After the hearing, Rivera submitted additional exhibits, some of them before May 18, 2018, and some of them after May 18, 2018. *Id*.  In her decision, the ALJ noted that she accepted those exhibits that were submitted before May 18, 2018. *Id*.  But concluding that the requirements of 20 C.F.R. § 416.1435(b) (relating to submitting evidence out of time) were not met, the ALJ did not accept the exhibits submitted after May 18, 2018. *Id*.

At step one of the five-step sequential-evaluation process, the ALJ found that Rivera had not engaged in substantial gainful activity since July 27, 2016, the application date. *Id.* at 13.  At step two, the ALJ found that Rivera had the severe impairments of lumbar degenerative disc disease, scoliosis, asthma, anemia,

coronary artery disease, myocardial infarction, hypothyroid, anxiety, depression, and post-traumatic stress disorder ("PTSD"). *Id.* at 14.  At step three of the sequential-evaluation process, the ALJ found that none of Rivera's impairments met or equaled the severity of the impairments listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 14–16.

The ALJ then fashioned an RFC, considering Rivera's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional climbing ramps and stairs but never climbing ladders, ropes, or scaffolds. She is further limited to occasional stooping, kneeling, crouching, or crawling.  She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards, such as heights and moving machinery.  She can understand, remember, and carry out simple instructions, and she is limited to occasional interaction with the public.

*Id.* at 17.

In making this RFC determination, the ALJ considered Rivera's testimony alleging "disability secondary to mixed physical and mental health disorders that causes back pain, leg pain, chest pain, shortness of breath, fatigue, decreased energy, limited activity tolerance, difficulty sleeping, depression, anxiety, cognitive problems, memory deficits, problems learning, problems with organization and planning, and concentrating difficulty." *Id.*  Specifically, the ALJ

considered Rivera's testimony that she experienced lower back pain, which she reported radiated from her lower back through her legs bilaterally and into her feet. *Id.* The ALJ also considered Rivera's reports that she experiences depressive symptoms, anxiety, and panic attacks. *Id.* Further, the ALJ considered Rivera's testimony that her chronic pain keeps her in bed most of that day, as well as her contention that when she is not in bed, her impairments cause her significant limitations. *Id.* The ALJ acknowledged that according to Rivera, sitting aggravates her lower back pain after three to four minutes; standing for two minutes aggravates the lower back and leg pain; she experiences numbness in her legs that causes her to fall; she has difficulty carrying a gallon of milk; she moved to a first floor apartment in order to avoid walking up the stairs; she is unable to bend; she requires assistance dressing and completing household chores; she needs a cane to walk when outside her home; she tires easily and has trouble breathing after light activity; she has chest pain every two or three days; treatment for her pain has not helped; she has panic attacks twice per months; she has nightmares and flashbacks to a past assault every two months; she has problems sleeping; and because she angers easily and becomes irritable with others, she stays home most of the time. *Id.* at 17–18.

The ALJ found Rivera's medically determinable impairments reasonably could be expected to cause her alleged symptoms. *Id.* at 18. But she found that

Rivera's statements regarding the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." *Id*.

In addition to the testimony of Rivera, the ALJ considered Rivera's treatment records and medical history during the relevant time. The ALJ noted that the medical records demonstrated that Rivera had a past medical history of anemia, asthma, and hypothyroidism. *Id.* The ALJ noted that in June 2016, Rivera presented to the emergency room with chest tightness, wheezing, and difficulty breathing. *Id.* Blood work revealed low red blood cell count, hemoglobin, and hematocrit consistent with anemia. *Id.* The ALJ noted, however, that after the initial treatment with blood transfusions in June 2016, Rivera's iron-deficiency anemia was treated routinely and conservatively with ferrous sulfate supplements. *Id.* Rivera used an albuterol inhaler for shortness of breath, but the ALJ noted that Rivera continued to smoke cigarettes; that pulmonary function testing in September 2017, revealed only mild intermittent asthma; that she continued to treat with asthma medication as needed; and that examinations revealed normal lung sounds. *Id.* The ALJ also noted that Rivera's hypothyroidism was being treated by medication, as endocrinology providers prescribed Levothyroxine. *Id.*

The ALJ concluded that the objective medical records did not support Rivera' complaints of debilitating lower back pain. *Id.* The ALJ noted that Rivera

reported lower back pain that radiated down her legs and stopped at her knees, and she visited the emergency room for acute pain episodes in her lower back. *Id.* The ALJ further noted that physical examination revealed limited abnormal findings, including a positive straight leg raise on the right due to pain; mild to moderate tenderness to palpation of the transverse process; and mild to moderate paraspinal muscle spasm. *Id.* But the ALJ also noted that Rivera's strength and sensation were intact bilaterally, that she walked with a normal gait; and that the emergency room physician treated her pain routinely and conservatively with Flexeril, Naprosyn, and a Prednisone taper. *Id.* Rivera underwent physical rehabilitation for lower back pain, and she had some decreased muscle performance in her hips and lower extremities, but she stopped that physical rehabilitation in April 2017, because she was hospitalized for cardiac issues. *Id.* During a June 2017 orthopedic examination, Rivera complained of persistent back and leg pain, and the examination found a positive straight leg raise. *Id.* Additionally, the ALJ noted that while radiographic findings confirmed thoracolumbar scoliosis and degenerative changes of the lumbar spine, the findings were not severe; there was no significant lumbar central stenosis; and that the radiographic findings revealed only moderate foraminal narrowing at L3-4. *Id.* And an August 2017, emergency department examination found that Rivera's back was non-tender. *Id*. at 19.

11

Moreover, the ALJ noted that in April 2017, Rivera was admitted to the hospital due to chest pain and that testing revealed a Type 1 non-ST-segment elevation myocardial infarction. *Id.* Rivera underwent a cardiac catheterization with stenting, she was prescribed numerous medications, and it was recommended that she follow a diet and that she exercise. *Id.* The ALJ also noted that in December 2017, Rivera returned to the emergency room for chest pain. *Id.* But her troponins were negative; her nuclear stress test was negative for evidence of ischemia; and her ultrasound echocardiogram revealed generally normal cardiac findings. *Id.*

That ALJ noted that in November 2016, Dr. Spencer Long, M.D. ("Dr. Long") conducted an independent medical consultative examination of Rivera. *Id.* At that examination, Rivera appeared uncomfortable sitting, she walked with a slow, antalgic gait, and she would not squat fully due to lower back pain. *Id.* Dr. Long noted, however, that she did not need an assistive device to walk, she did not need help changing for the examination, she transferred from a chair without difficulty, and she moved around the room and on and off the examination table without difficulty. *Id.* Dr. Long's examination found that Rivera had scoliosis, straight leg raise produced pain bilaterally, and Rivera had slightly decreased strength in her legs. *Id.* But Dr. Long noted that trigger points were negative, Rivera's joints were stable and non-tender, she had normal strength in her upper

extremities, her lung sounds were normal, and x-rays of the lumbar spine showed straightening but no degenerative changes. *Id*.

As to Rivera's mental-health impairments, the ALJ noted that Rivera had a history of depression. *Id.* at 19.  In July 2016, Rivera presented to the emergency room for increased depression due to emotional distress. *Id.*  And in November 2016, Dr. Tommy Davis ("Dr. Davis") conducted an independent psychological evaluation of Rivera. *Id.*  At that evaluation, Rivera reported depression and PTSD symptoms from past abuse as well as recurring weekly panic attacks, auditory hallucinations, and cognitive symptoms. *Id.*  The ALJ noted that Rivera's mental status examination, however, revealed that she only had mild to moderate symptoms and limitations. *Id*.  At that examination, although Rivera was anxious and her memory was impaired, her appearance was normal; her speech was clear and fluent; her thought processes were coherent and goal-directed with no signs of hallucinations, delusions, or paranoia; she had a full range of affect; and she was oriented to person, place, and time. *Id.*  And she reported normal daily activities including personal care, light household chores, shopping, and driving. *Id*.

Next, the ALJ analyzed the opinions of five doctors in the case. *Id.* at 20–22. At the outset, the ALJ considered the opinion of Dr. Candelaria Legaspi ("Dr. Legaspi"), the State agency physician. *Id*. at 20.  Dr. Legaspi opined that Rivera could perform light work, while avoiding concentrated exposure to extreme cold,

wetness, vibration, and hazards, and moderate exposure to noise, humidity, and pulmonary irritants. *Id.* at 20.  Reasoning that Dr. Legaspi's opinion was consistent with the objective medical records and Rivera's daily activities, the ALJ assigned great weight to Dr. Legaspi's opinion. *Id*.  The ALJ further explained that Dr. Legaspi's opinion was consistent with the objective and radiographic findings of Rivera's lower back, which demonstrated mild to moderate signs that improved with routine and conservative care; that her cardiac functioning and asthma were both well-controlled with medication; and that medication and supplements controlled her anemia and hypothyroidism. *Id*.  The ALJ concluded the Dr. Legaspi's opinion was consistent with the record evidence, which demonstrated that Rivera could provide for her personal care and perform light household chores. *Id.*

The ALJ then considered the opinion of Dr. Long. *Id.*  Dr. Long opined that Rivera could perform less than a full range of sedentary work; that she could only stand and sit for 45 minutes each; that she could never carry any weight; that she could only occasionally balance and stoop; and that she could never climb, kneel, crouch, and crawl. *Id.*  The ALJ assigned little weight to Dr. Long's opinion, concluding that the objective medical records did not support the limitations set forth by Dr. Long. *Id.*  The ALJ noted that diagnostic imaging found straightening of the spine consistent with scoliosis and some mild to moderate degenerative

14

changes. *Id.* The ALJ further explained, however, that the objective clinical examinations from emergency and orthopedic providers showed mild limitations involving the lower back and legs; that Rivera had generally normal strength and sensation; that her lower back symptoms improved with routine and conservative care that included physical therapy, muscle relaxants, and NSAIDS; and that the lung-functioning tests demonstrated mild intermittent asthma that was controlled with bronchodilators. *Id.* Concluding that the medical findings and Rivera's daily activities did not support the significant limitations set forth by Dr. Long, the ALJ afforded little weight to Dr. Long's opinion. *Id*. at 20–21.

The ALJ also considered the opinion of Dr. Fotis G. Mystakas ("Dr. Mystakas"), Rivera's treating orthopedist. *Id.* at 21. Dr. Mystakas recommended that Rivera avoid bending and lifting. *Id.* The ALJ assigned little weight to Dr. Mystakas' opinion, concluding that the limitation on bending and lifting was not consistent with the objective medical records and appeared to rely primarily on the subjective reporting of Rivera. *Id.* According to the ALJ, Dr. Mystakas' opinion was inconsistent with the orthopedic examinations of record, which demonstrated generally normal strength and some subjective pain with straight leg raise, and his opinion was unsupported by the radiographic studies, which found mild to moderate changes with no serious canal stenosis or foraminal narrowing. *Id*. The ALJ also noted that Rivera's daily activities were not consistent with avoiding

bending and lifting as Rivera was able to provide for her personal care and perform light household chores, including cleaning and laundry. *Id.*

The ALJ also considered the opinion of Dr. Henry Weeks ("Dr. Weeks"), a State agency psychologist. *Id.* Dr. Weeks opined that Rivera could carry out simple instructions and complete simple, routine, and repetitive tasks with no more than moderate problems interacting with others. *Id.* The ALJ assigned significant weight to Dr. Weeks' opinion regarding Rivera's ability to carry out simple instructions and complete simple, routine, and repetitive tasks, concluding that the objective mental health findings, the routine and conservative treatment without a need for intensive or extensive mental health treatment, and Rivera's daily functioning supported Dr. Weeks' findings in this regard. *Id.* The ALJ explained that Rivera's mental status examination found generally normal functioning except for some memory impairment. *Id.* And that ALJ noted that Rivera's daily activities, which including personal care, light household chores, shopping, driving, and watching television, were consistent with the limitation to simple tasks. *Id.* The ALJ afforded lesser weight, however, to Dr. Weeks's opinion that Rivera had moderate problems interacting with supervisors, coworkers, and the public, concluding that those social limitations were primarily based on Rivera's subjective complaints and were inconsistent with the observations of Rivera's

treating providers of normal social functioning during examinations and treatments. *Id.*

Finally, the ALJ considered the opinion of Dr. Davis, who opined that Rivera was capable of understanding, remembering, and carrying out simple instructions with no more than mild limitations and no more than moderate limitations regarding complex instructions and social interaction. *Id.*  The ALJ concluded that Dr. Davis's mental status examination and Rivera's routine and conservative care without the need for intensive or extensive mental health treatment supported Dr. Davis's opinion in this regard. *Id.*  But the ALJ assigned less weight to Dr. Davis's opinion that Rivera had moderate problems interacting with supervisors, coworkers, and the public, concluding that those social limitations appeared to be based mostly on Rivera's subjective complaints and were inconsistent with the observations of Rivera's treating providers of normal social functioning during examinations and treatments. *Id.*

At step four of the sequential-evaluation process, the ALJ concluded that Rivera was unable to perform any past relevant work. *Id.* at 22.  The ALJ then continued to step five and concluded that Rivera could perform other jobs in the national economy, including working as a router, a non-postal mail clerk, and an office helper. *Id.* at 23.

17

## V.  Discussion.

On appeal, Rivera challenges the ALJ's decision on three bases: (1) that the ALJ erred by failing to provide adequate exertional and non-exertional limitations in crafting the RFC; (2) that the ALJ erred at step two of the sequential-evaluation process; and (3) that the ALJ erred in considering the opinion evidence. *Doc. 11* at 1–25.

### A.  Substantial Evidence Supports the ALJ's RFC Assessment.

Rivera's arguments on appeal largely concern the ALJ's RFC assessment.[3] The Court of Appeals has ruled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  "'[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359).  The court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL

---

[3]  The Commissioner contends that because Rivera fails to set forth a coherent and developed argument regarding the ALJ's RFC assessment, the court should deem Rivera to have waived any argument regarding the RFC. *Doc. 15* at 15–16.  Given the unfocused nature of Rivera's arguments, the Commissioner's contention in this regard is not without some merit.  Nevertheless, to the extent we can understand them, we will address Rivera's arguments with respect to the RFC assessment.

4189661 at *3 (M.D. Pa. Apr. 13, 2018), *report and recommendation adopted*, 2018 WL 4184303, at *1 (M.D. Pa. Aug. 31, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *See Burnett*, 220 F.3d at 121 (internal citations omitted); *see also* SSR 96-8p, WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'. . . ."). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Id*. ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

Applying the above standard to the present record, the court concludes that the ALJ's RFC determination is supported by substantial evidence. Rivera first

argues that the ALJ provides exertional and non-exertional limitations that are insufficient in addressing her severe impairments. *Doc. 11* at 12–18.  More specifically, Rivera contends that the ALJ should have included additional limitations in the RFC to address her need for unscheduled breaks, her inability to remain on task, and her need to miss work from time to time. *Id.* at 17.

In response, the Commissioner argues that the ALJ thoroughly considered Rivera's impairments in crafting the RFC and adequately explained her rationale in finding no greater functional limitations. *Doc. 15* at 20-21.  Additionally, the Commissioner contends that Rivera erroneously relies on her subjective complaints to aver that the RFC should have contained additional functional limitations. *Id.* at 20.  The Commissioner submits that Rivera's arguments on appeal are simply a request to reweigh the evidence, which this court cannot do. *Id.*

Here, we find that substantial evidence supports the ALJ's RFC assessment. Contrary to Rivera's assertions, the ALJ addressed her impairments by confining her to a limited range of light work and incorporating additional exertional and non-exertional limitations to address the symptoms caused by her medical impairments in the RFC.  For example, to address her physical impairments, the ALJ concluded that Rivera could occasionally climb ramps and stairs; and that she could occasionally stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. *Id.*  Additionally, to further address her medical impairments,

the ALJ limited Rivera's exposure to extreme cold and heat, wetness, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards, such as heights and moving machinery. *Id.*  To address Rivera's mental impairments, the ALJ concluded that "she could understand, remember, and carry out simple instructions," and restricted Rivera to occasional interaction with the public. *Id.*

Rivera contends that the exertional and non-exertional limitations included in the RFC are insufficient in addressing her physical and mental impairments, and she points to evidence that she contends supports additional limitations.  The ALJ rejected, however, Rivera's assertions regarding her limitations finding them inconsistent with the medical evidence overall and with her daily activities.  While Rivera suggests that the court accept her analysis of the evidence over the analysis set forth by the ALJ, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").  And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

In sum, given that ALJ adequately explained her decision for accepting certain evidence and rejecting other evidence and adequately accounted for

Rivera's limitations in crafting the RFC, we conclude that the ALJ's RFC

determination is supported by substantial evidence.

## B.  Substantial Evidence Supports the ALJ's Step-Two Evaluation.

Next, Rivera challenges the ALJ's analysis at step two of the

sequential-evaluation process. *Doc. 11* at 18–21.  Specifically, Rivera contends

that the medical record confirms several physical impairments, which were not

properly considered by the ALJ in crafting the RFC. *Id* at 19.  In relevant part,

Rivera alleges that the medical record demonstrates that she suffers from the

following medical conditions: (1) a diagnosis of fibromyalgia with pain in multiple

joints, and stiffness and tingling in her hands, which sometime get swollen; (2) a

diagnosis of lupus; (3) 18 of 18 tender points, which is consistent with a diagnosis

of fibromyalgia; and (4) significant bilateral knee and leg pain. *Id.*  Rivera further

asserts that the ALJ failed to properly consider her fibromyalgia under SSR 12-2p

(Titles II and XVI: Evaluation of Fibromyalgia); her lupus under listing 14.02

(Systemic lupus erythematosus); and her anxiety and panic attacks under listing

12.06 (Anxiety and obsessive-compulsive disorders). *Doc. 11* at 20.  At bottom,

Rivera avers that the ALJ should have found these medical conditions severe

impairments, as they have more than a minimal effect on her ability to perform her

daily activities. *Id.* at 21.

In response, the Commissioner argues that to support her arguments as to this issue, Rivera purports to rely on additional evidence that she did not timely submit to the ALJ. *Doc. 15* at 12.  The Commissioner asserts that because Rivera did not argue that this evidence was new or material, or that she had good cause for failing to submit it to the ALJ, the district court cannot properly consider this evidence in its substantial-evidence review. *Id.*  The Commissioner further asserts that Rivera did not allege disability based on bipolar disorder, and she did not mention this medical condition at her hearing. *Id.* at 22.  Thus, the Commissioner contends that Rivera cannot now claim error because of an impairment she never raised at the administrative level. *Id.*  Regarding her alleged fibromyalgia, the Commissioner avers that while Rivera raised this medical condition at the hearing, the only evidence concerning a fibromyalgia diagnosis is contained in the additional evidence, which was not properly before the ALJ. *Id.* at 23–24.

At step two of the sequential-evaluation process, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  The regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921.  The Court of Appeals has held that the step-two inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*

*v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004); N*ewell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  To establish the requisite level of limitation, a claimant "must support his or her contentions with objective medical evidence." *Bowen*, 482 U.S. at 146; *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 958 (3d Cir. 2006).

Here, we conclude that the ALJ's step-two evaluation is supported by substantial evidence.  At the outset, the Commissioner is correct that Rivera purports to rely on additional evidence that she failed to submit to the ALJ. *Doc. 15* at 12–15.  At the conclusion of the administrative hearing, the ALJ informed Rivera that the record would remain open until May 18, 2018, for the submission of additional evidence. *Admin. Tr.* at 183–84, 210.  While Rivera submitted some additional evidence during this timeframe, she relies on evidence rejected by the ALJ because it was submitted after the May 18, 2018 deadline. *Id.* at 11, 37–39, 125–27, 149–50.  As the Commissioner correctly avers, because Rivera does not argue in her brief-in-support that this evidence was new or material, or that she had good cause for failing to submit it to the ALJ during the requisite timeframe, the court cannot properly consider this evidence in its substantial-evidence review. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001); *see also Pennington v. Comm'r of Soc. Sec.*, 683 F. App'x 168, 170 (3d Cir. 2017).

24

For this reason, we conclude that the ALJ did not err in failing to consider Rivera's alleged fibromyalgia and lupus.  Simply put, the ALJ cannot be expected to consider or credit a diagnosis based on evidence that was not properly before her at the administrative level. *See Bowen*, 482 U.S. at 146; *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 958 (3d Cir. 2006).

We also conclude that the ALJ did not err in her consideration of Rivera's anxiety and panic attacks.  Rivera contends that the ALJ failed to properly consider her anxiety disorder and panic attacks under listing 12.06. *Doc. 11* at 20–21.  But the ALJ did, in fact, evaluate Rivera's anxiety disorder under listing 12.06. *See Admin. Tr.* at 15.  The ALJ concluded, however, that Rivera's anxiety disorder did not meet or medically equal a listing impairment. *Id.*  In making this determination, the ALJ considered whether the "paragraph B" criteria were satisfied. *Id.*  In pertinent part, to satisfy the "paragraph B" criteria, the claimant's mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves. *Id.*  Based upon her review of the entire record, however, the ALJ concluded that Rivera had moderate limitation in the area of understanding, remembering, or applying information; moderate limitation in the area of interacting with others; moderate limitation in

the area of concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. *Id.* at 15–16.  Thus, the ALJ concluded that Rivera's anxiety disorder did not meet or medically equal listing 12.06.

Moreover, while Rivera contends that the ALJ failed to consider her bilateral knee and leg pain in crafting the RFC, the court is not persuaded by Rivera's argument as to this issue.  As mentioned above, the ALJ considered all of Rivera's physical and mental impairments by confining Rivera to a limited range of light work with additional functional limitations. *Id.* at 18–22.

Therefore, because the ALJ properly considered all of Rivera's medical impairments that were supported by the record before the ALJ, we find no basis for disturbing the ALJ's determination as to this issue.

### C.  The ALJ Did Not Err in Weighing the Opinion Evidence.

Rivera's last contention is that the ALJ erred in weighing the opinion evidence. *Doc. 11* at 21–24.  Specifically, Rivera argues that the ALJ erred by assigning too little weight to the opinions of Dr. Long and Dr. Davis, who conducted consultative examinations of Rivera, and too much weight to the opinions of Dr. Legaspi and Dr. Weeks, the State agency medical consultants. Rivera contends that whereas Dr. Long and Dr. Davis examined her, the State agency consultants did not. *Id*. at 23.  She also contends that Dr. Legaspi and Dr.

Weeks offered their opinions without access to her entire medical record and that their opinions are inconsistent with the record evidence. *Id.* at 24.

In response, the Commissioner argues that there is no merit to Rivera's arguments in this regard. *Doc. 15* at 24–27.  Particularly, the Commissioner asserts that no treating source submitted a medical source opinion on behalf of Rivera. *Id.* at 24.[4]  The Commissioner further contends that State agency consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims. *Id.* at 26.  Therefore, according to the Commissioner, the ALJ's reliance on the opinions of the State agency consultants of record in this case is proper and consistent with the regulations and law of this circuit. *Id.*

As set forth earlier, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361.  The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927.  An ALJ may give an

---

[4]  As set forth above in connection with the summary of the ALJ's decision, Dr. Mystakas, Rivera's treating orthopedist, recommended that Rivera avoid bending and lifting.  This opinion is set forth in Dr. Mystakas's treatment records. *See Admin. Tr.* at 860.  Dr. Mystakas did not complete a separate medical source statement.  In connection with her contention that the ALJ erred in weighing the opinion evidence, Rivera cites to regulations regarding the opinions of treating sources, but she does not mention Dr. Mystakas's opinion in her argument. *See doc. 11* at 21–24.

opinion less weight or no weight if it does not present relevant evidence, if it does

contain a sufficient explanation to support it, or if it is inconsistent with the record

as a whole. 20 C.F.R. § 416.927(c).  The ALJ may choose which medical evidence

to credit and which to reject as long as there is a rational basis for the decision.

*Plummer*, 186 F.3d at 429.

Contrary to Rivera's contentions, substantial evidence supports the ALJ's

consideration of the opinion evidence of record.  As set forth above in connection

with the summary of the ALJ's opinion, the ALJ analyzed the opinions of doctors

Legaspi, Long, Mystakas, Weeks, and Davis. *Admin. Tr.* at 20–21.  And she

explained the weight she accorded those opinions and the reasons for that weight.

*Id*.

Rivera argues that the ALJ assigned too much weight to the State agency

medical consultants of record who never examined her and who did not have

access to the entire medical record. *Doc. 11* at 21–24.  But as the Commissioner

correctly asserts, State agency consultants are highly qualified physicians who are

experts in the evaluation of the medical issues in disability claims. *See* 20 C.F.R.

§ 416.913a; *see also Chandler*, 667 F.3d at 361 (noting that "[a]lthough treating

and examining physician opinions often deserve more weight than the opinions of

doctors who review records," the ALJ is not bound by such opinions and "[s]tate

agent opinions merit significant consideration as well").  Further, "because State

agency review precedes the ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler*, 667 F.3d at 361. "The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it." *Id*. "Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding . . . is an update to the report required." *Id.* (italics in original) (quoting SSR 96–6p (July 2, 1996)). "The ALJ reached no such conclusion in this case." *Id*. Thus, the court finds that the ALJ did not err in relying on the opinions of the State agency consultants.

In sum, the ALJ chose between contrasting medical opinions, giving greater weight to those opinions which she found were more congruent with Rivera's treatment records and activities of daily living. It is the right and responsibility of the ALJ to make such assessments, and we find that substantial evidence supported the ALJ's decision. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Rivera's argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court

may not weigh the evidence or substitute our conclusions for those of the ALJ). Because we are not permitted to reweigh the evidence, we conclude that the ALJ did not err in her consideration of the opinion evidence of record.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Rivera.  An appropriate order follows.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge